| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC# _____<br>DATE FILED: 8/2/13 |

NATHANIEL SIMS,

                Plaintiff,

- against -

DETECTIVE FARRELLY,

                Defendant.

**OPINION AND ORDER**

10 Civ. 4765 (ER)

Ramos, D.J.:

    Defendant Detective Farrelly ("Farrelly") brings this Motion for Summary Judgment seeking dismissal of the Second Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 56. Doc. 80. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

**I. Background**

    **A. Procedural History**

    Plaintiff Nathaniel Sims ("Plaintiff"), appearing *pro se*, commenced this action on June 17, 2010, by filing a declaration in support of his request to proceed *in forma pauperis* and a complaint asserting constitutional claims pursuant to 42 U.S.C. § 1983 against the White Plains, N.Y. Police Dep[artment] Narcotic[s] Division and the White Plains, N.Y. Police Dep[artment] Special Response Team. Doc. 2 ("Compl."). In his original complaint, Plaintiff alleged that on April 24, 2010, he was falsely and forcibly arrested, unreasonably strip searched, and subsequently released without charges. Compl. 3. By Order dated June 17, 2010, the Honorable Loretta A. Preska granted Plaintiff's request to proceed *in forma pauperis* and directed him to submit an amended complaint within sixty days. Doc. 3. Specifically, Judge Preska instructed

Plaintiff to amend his complaint to properly state a claim against a municipal defendant pursuant to 42 U.S.C. § 1983, and to name as defendant(s) the individual(s) involved in the alleged deprivations of his rights. *Id.*

Plaintiff filed an amended complaint on July 26, 2010, asserting the same constitutional claims against defendants Detective Farrelly and "P.O. John Doe," as well as new claims relating to his treatment at a Veterans Administration hospital in July 2010 against defendants Dr. Goldfarb and Dr. Sheikh. Doc. 6 ("Am Compl."). On July 29, 2010, Plaintiff filed a Second Amended Complaint, alleging claims relating to his treatment at a different Veterans Administration hospital and at St. John's Hospital against Dr. David Wiley, Myrtho Gardiner, Dr. Lebron, Nurse Assistant Greer, Social Worker Stanley and Charles Carrol. Doc. 9. Although the Second Amended Complaint was improperly filed, the district court judges to whom this case was previously assigned considered the Second Amended Complaint as if it had been properly filed, in light of Plaintiff's status as a *pro se* litigant, as a supplemental pleading asserting claims in addition to those asserted in the Amended Complaint, and not as a substitute for the Amended Complaint.[1] *See* Docs. 40, 51, 57. The Court notes that the parties to this action have likewise treated the Amended Complaint together with the Second Amended Complaint as the operative pleadings throughout the course of this litigation.

On January 25, 2011, Defendants Carrol, Greer, Lebron and Stanley filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 24. Defendants Gardiner, Goldfarb, Sheik and Wiley filed a motion to dismiss on February 9, 2011. Doc. 32. Farrelly filed an answer on March 25, 2011, wherein he asserted cross-claims against defendants Goldfarb, Sheikh and P.O.

---

[1] This case was initially assigned to the Honorable J. Frederick Motz, U.S. District Court Judge for the District of Maryland, sitting by designation in the Southern District of New York. Doc. 7. The case was reassigned to the Honorable Vincent L. Briccetti on June 6, 2011. Doc. 55. The case was reassigned to the undersigned on January 6, 2012. Doc. 61.

John Doe.  Doc. 39.  By Memorandum and Order dated April 4, 2011, the Honorable J. Frederick Motz granted the motions to dismiss, and dismissed Plaintiff's claims in the Amended and Second Amended Complaints against defendants Carrol, Greer, Lebron, Stanley, Gardiner, Goldfarb, Sheik and Wiley.  *See* Docs. 40, 41.

On April 7, 2011, defendants Sheikh and Goldfarb filed a motion to dismiss Farrelly's cross-claim.  Doc. 47.  By letter to Farrelly dated May 16, 2011, Judge Motz stated that Farrelly's original answer and cross-claim had not been properly filed, and instructed Farrelly to re-file the answer and cross-claim electronically on or before May 28, 2011.  Doc. 51.  Judge Motz also noted that Farrelly "may be able to file a motion to dismiss the complaint against him on the ground that the facts alleged by plaintiff do not state a claim upon which relief can be granted," and granted Farrelly leave to file such a motion in lieu of his answer and cross-claim.  *Id.*  Farrelly re-filed his Answer to the Second Amended Complaint on May 24, 2011.[2]  Doc. 52.  On September 26, 2011, the motion to dismiss Farrelly's cross-claim against Sheikh and Goldfarb was granted.  Doc. 57.

At a pre-motion conference before this Court on July 31, 2012, Plaintiff voluntarily dismissed his claims against the John Doe defendant.  *See* Minute Entry dated July 31, 2012.  Accordingly, the only defendant remaining in this case is Detective Farrelly, and the only

---

[2] Despite Farrelly's failure to avail himself of the opportunity to file a motion to dismiss upon Judge Motz's invitation, Doc. 51, Farrelly's counsel requested an extension of time to file a motion to dismiss by *ex parte* letter dated September 27, 2011, which request was denied by Judge Briccetti on October 5, 2011, on the ground that Farrelly had waived the opportunity to file a motion to dismiss by re-filing his answer on May 24, 2011.  Doc. 58.  The Court notes that Farrelly did not seek leave to file a motion for judgment on the pleadings at that time, or at any subsequent point in this litigation.

remaining claims are Plaintiff's § 1983 claims for violations of his Fourth Amendment rights.[3] *See* Stmt. Fact Pursuant to Rule 56.1 ("Def.'s 56.1 Stmt.") ¶ 13, Doc. 81.

### B. Factual Background

The following facts are undisputed unless otherwise noted.

On April 22, 2010, non-party Detective Jim Tassone of the White Plains Police Department ("WPPD") filed an affidavit in support of a search warrant application for the basement apartment at 188 Fisher Avenue, White Plains, N.Y. (the "Residence"), the person of non-party Gregory R. Moore ("Moore"), any and all persons located in the Residence, and any storage area associated with the Residence, for the purpose of seizing evidence relating to a narcotics investigation of Moore. *See* Maria Aff. Ex. G.[4]  A search warrant order was entered by a Justice of the City Court for the City of White Plains on April 22, 2010. Ex. H.

The WPPD executed the search warrant at the Residence at approximately 9:00 pm on April 24, 2010. Ex. L2, at 1. Plaintiff, along with a number of other individuals, was playing cards at the Residence when a number of police officers in riot gear entered the apartment with guns drawn and ordered everyone to get down on the floor and not to move. Ex. F ("Sims Dep.") 26:4-20, 57:10-13; *see also* Def.'s 56.1 Stmt. ¶ 3. Plaintiff testified that an unidentified police officer "more or less pushed [him] down and then [] put his foot forcibly on [Plaintiff's]

---

[3] Plaintiff's claims against Farrelly are set forth in the Amended Complaint, but not in the Second Amended Complaint. As noted above, the Second Amended Complaint is being treated here as a supplement to, rather than a replacement of, the Amended Complaint. *See supra* p. 2. Accordingly, in deciding the instant motion, the Court will consider the allegations against Farrelly that are set forth in the Amended Complaint. *See* Am. Compl. 3.

[4] Citations to "Maria Aff." refer the Affidavit of Joseph A. Maria in Support of Defendant's Motion for Summary Judgment. Doc. 86. All subsequent citations to the Exhibits attached to the Affidavit of Joseph A. Maria are referenced herein as "Ex.___."

4

back while th[e police] were getting everything under control because people were scattering."[5] Sims Dep. 38:22-39:5, 57:10-59:10.  Plaintiff remained on the floor with the officer's foot on his back for ten to fifteen minutes before the officers took everyone outside and lined them up against a wall, at which point they were handcuffed and asked "various questions."  Sims Dep. 39:6-13, 59:11-14, 60:10-61:7; *see also* Ex. L2, at 2; Def.'s 56.1 Stmt. ¶ 5. The WPPD detained all eight individuals who were located inside the Residence at the time the warrant was executed, Ex. L2, at 1-2, and eventually transported them to the WPPD while the search of the Residence was completed.  *Id.* at 2; Def.'s 56.1 Stmt. ¶ 5.

Detective Farrelly, who was assigned to the Intelligence Unit of the WPPD at the time, was asked to participate in the execution of the warrant.  Aff. Det. Farrelly Supp. Mot. Summ. J. ("Farrelly Aff.") 1, Doc. 83.  Farrelly's participation was limited to "guard[ing] the perimeter" while the warrant was executed, which meant that he "stood outside to see if anyone in the premises tried to escape or if any items were thrown out of windows and/or doors."  *Id.* at 2; *see also* Ex. I, at 8.  Farrelly avers that he "was present when the persons detained were brought to Headquarters," but that he "did not transport or detain anyone."  Farrelly Aff. 2.

As a result of the search, the WPPD seized six pieces of a substance that appeared to be crack-cocaine with an aggregate weight of 1.1 grams, 5 glass pipes containing burnt residue, a gambling ledger, and $148.00 in U.S. currency.  Exs. K, L2, at 2-3.  None of the contraband was seized from Plaintiff's person.[6]  Ex. L2, at 2.

---

[5] At his deposition, Plaintiff explained that he was not able to ascertain the identity of the officer who pushed him down and forcibly placed a foot on his back because all of the police officers were wearing masks.  Sims Dep. 59:7-10.

[6] The evidence in the record establishes that the WPPD recovered:  six pieces of plastic containing a substance that appeared to be crack-cocaine from Moore's front right pants pocket, two glass pipes containing a burnt residue from the floor underneath one of the other detainees, and three glass pipes containing a burnt residence from the ceiling

Upon arriving at the police station, Plaintiff was taken to a "desk area" where he waited for thirty to forty minutes before two officers brought him to a bathroom where he was subjected to a strip search. Sims Dep. 39:12-15, 61:25-62:19, 62:24-63:10, 65:7-68:5. Plaintiff was not questioned by any police officers at the WPPD prior to the strip search. *See* Sims Dep. 66:11-22. According to Plaintiff, the two officers who conducted the strip search "told [him] to take off [his] clothes, bend over and [s]how [his] anus and lift [his] testicles." Sims Dep. 73:9-11. The officers visually inspected Plaintiff, but did not touch him. Sims Dep. 73:14-24. The evidence in the record reveals that Farrelly was one of the two officers who strip searched all of the detainees. Farrelly Aff. 2; Ex. O.

Farrelly avers that he was asked by Sergeant Moskalik to aid in the strip search of the detained individuals.[7] Farrelly Aff. 2. According to a memorandum from Farrelly to Chief Bradley, Desk Supervisor Lieutenant Knox gave Farrelly permission to conduct strip searches of all of the detained individuals, after Farrelly explained "the circumstances of the incident," "[d]ue to the narcotics nature of the incident, the easy concealability [sic] of crack cocaine, and the criminal history of many of the subjects . . . ." Ex. O. The WPPD did not recover any contraband from any of the detainees as a result of the strip searches. *Id.*

After the strip search, Plaintiff was taken upstairs and handcuffed to a railing in a room with no windows. Sims Dep. 39:15-17, 62:21-23, 63:14-19, 74:12-20. Approximately forty-five minutes to one hour later, Detective Farrelly and another officer entered the room and asked

---

tile. Ex. L2 at 2-3. The gambling ledger was recovered from the top of a television set and the U.S. currency was recovered from the poker table. *Id.*

[7] There is no evidence in the record relating to any less intrusive searches of Plaintiff prior to the strip search. Additionally, based on Plaintiff's testimony, he was not questioned by any officers at the police station before the strip search. Sims Dep. 66:11-22. Plaintiff also testified that he was not booked, photographed, or fingerprinted at any point before he was released by the police. Sims Dep. 104:24-105:3.

6

Plaintiff if he wanted to make a statement, which Plaintiff agreed to do. Sims Dep. 74:23-75:11, 39:17-22; *see also* Farrelly Aff. 2; Ex. L2, at 2. Farrelly proceeded to question Plaintiff, and then brought Plaintiff to another room where he typed out Plaintiff's statement, which Plaintiff signed.[8] Sims Dep. 39:23-40:10, 41:4-6, 76:21-79:12; *see also* Ex. N. In the statement, Plaintiff averred that he "did not know that anyone in the house was selling drugs or using drugs," and that he "did not know anything about drugs in the house." Ex. N; *see also* Sims Dep. 79:8-12. Plaintiff testified that Farrelly gave him a Miranda warning before he began writing Plaintiff's statement. Sims Dep. 79:13-80:5; *see also* Farrelly Aff. 2; Ex. L2, at 2. The record contains a Miranda waiver that was signed by Plaintiff and Farrelly at 11:26 pm. Ex. M.

Plaintiff and three other individuals were released at approximately 12:15 am on April 25, 2010 "after [the WPPD] investigation revealed that there was no evidence relating them to the narcotic [sic] activity in the [Residence]." Ex. L2, at 3; Farrelly Aff. 2. A fourth individual was released at approximately 1:00 am for the same reason. Ex. L2, at 4. The remaining three individuals were charged with various criminal offenses.[9] *Id.* at 1. Plaintiff was not charged with any crimes. Def.'s 56.1 Stmt. ¶ 9; Sims Dep. 63:15-16, 80:6-12.

---

[8] In opposing Farrelly's motion for summary judgment, Plaintiff asserts for the first time that the statement that he provided to Farrelly was involuntary, Sims Aff. ¶ 7, Doc. 83; Pl.'s Stmt. Fact ("Pl.'s 56.1 Stmt.") ¶ 7, Doc. 89, and that the statement was "dictated by Defendant Farrelly[,] and now, it's doctored." Pl.'s 56.1 Stmt. ¶¶ 7, 15. These claims do not appear in any of the three complains that Plaintiff has filed in this action. *See* Docs. 2, 6, 9. "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) (citations omitted); *see also Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (collecting cases holding that it is inappropriate to consider claims raised for the first time in opposition to summary judgment), *aff'd*, 445 F. App'x 389 (2d Cir. 2011). Further, the voluntariness of Plaintiff's statement is not material to either of his Fourth Amendment claims. Accordingly, the Court has not considered these assertions in deciding the instant motion.

[9] Moore was charged with criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree, Ex. L2, at 1, which are, respectively, Class B and Class D felonies. N.Y. Penal Law §§ 220.16(1), 220.06(5). The individual from whom two crack pipes were seized was charged with criminal possession of a controlled substance in the seventh degree, Ex. L2, at 1, which is a Class A misdemeanor. N.Y. Penal Law § 220.03. The third individual, who admitted to running twice-weekly poker games at the

7

**II. Legal Standard Governing Motions for Summary Judgment**

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c)(1)(A). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 532 (S.D.N.Y. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23; *see also* Fed. R. Civ. P. 56(c)(1)(B). The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine

---

Residence, Ex. L2 at 3-4, was charged with promoting gambling in the second degree and criminal nuisance, *id.* at 1, which are, respectively, Class A and Class B misdemeanors. N.Y. Penal Law §§ 225.05, 240.45(2).

issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)). "The nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts,'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322). In that situation, there can be no genuine dispute as to any material fact, "since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

## III. Plaintiff's Fourth Amendment Claims

Plaintiff claims that his Fourth Amendment rights were violated when he was falsely arrested and unreasonably strip searched, without probable cause, by Farrelly.  Am. Compl. 3; Sims Aff ¶ 3; Pl.'s 56.1 Stmt. ¶ 18.

### A. False Arrest Claim

#### 1. Legal Standard

The Second Circuit has explained that a "§ 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (Sotomayor, J.) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "Accordingly, a plaintiff asserting such a claim must show some deprivation of liberty consistent with the concept of seizure." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 100, 116 (2d Cir. 1995)) (internal quotation marks omitted).

In *Jaegly*, the Second Circuit stated that, "[i]n analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Jaegly*, 439 F.3d at 151 (citation omitted).  "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citation and internal quotation marks omitted); *see also Amore v. Novarro*, 624 F.3d 522, 532 & n.13 (2d Cir. 2010) (concluding that plaintiff "was

sufficiently detained for him to have been 'arrested' for purposes of bringing [a] false arrest claim," where the defendant conceded that the plaintiff "was detained, contrary to his express desire to be released, while [the officer] compelled him to produce identification and waited for backup to arrive.").

### 2. Discussion

In support of the instant motion, Defendant first argues that he is entitled to summary judgment because the Second Amended Complaint does not contain any allegations relating to Farrelly.  Mem. Law Supp. Def. Det. Farrelly's Mot. Summ. J. ("Def.'s Mem.") 2, 7-8, Doc. 84.  For the reasons stated above, the Court will not grant Defendant's motion for summary judgment on this ground.  *See supra* note 3.  Defendant goes on to argue that "if this Court was to consider that Detective Farrelly took Plaintiff into custody," he is entitled to qualified immunity because "[t]here was a warrant to search and seize signed by a City Court Judge," [and i]t is clear he acted in good faith [] in compliance with the language of the warrant . . . ."  Def.'s Mem. 9.  Defendant also asserts that "[i]n addition to the mandatory nature of the language of the warrant [Farrelly] was obligated to perform his duty and as directed by his superior officer."  *Id.*

Alternatively, Farrelly argues that the detention of Plaintiff was objectively reasonable under the Fourth Amendment, because "Detective Farrelly knew a warrant existed issued by the City Court of the City of White Plains," which was "a search and seizure warrant for the premises and those therein," and "Plaintiff was therein and participated in illegal activity by his own admission."  *Id.* at 10.  Defendant does not cite to any evidence in the record to support his assertion that Plaintiff admitted to engaging in illegal activity.

Defendant's arguments are entirely meritless.  First, the warrant Defendant relies on only authorized the *search* of the premises and of any individuals found therein; the *search* warrant in

11

the record did not authorize the officers to arrest anyone.  Ex. H; *see Zurcher v. Stanford Daily*, 436 U.S. 547, 555, 557 n.6 (1978) (explaining that probable cause for a search warrant does not necessarily justify an arrest, because "[e]ach requires probabilities as to somewhat different facts and circumstances . . . . while probable cause for arrest requires information justifying a reasonable belief that a crime has been committed and that a particular person committed it, a search warrant may be issued on a complaint which does not identify any particular person as the likely offender . . . [and] without any showing that the occupant is guilty of any offense whatever") (citations and internal quotation marks omitted); *see also* Wayne R. LeFave, 2 Search & Seizure: A Treatise on the Fourth Amendment § 3.1(b) (5th ed.) (2012) (discussing the "critical" distinction between probable cause for a search warrant and probable cause for an arrest).  Second, the fact that Farrelly was purportedly acting pursuant to orders from a superior officer is irrelevant to the question of whether his conduct was reasonable under the Fourth Amendment.

  Despite Defendant's failure to offer any meritorious arguments for an award of summary judgment on Plaintiff's false arrest claim, the Court concludes that dismissal of the claim is appropriate, because "'[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)); *see also Brandon*, 705 F. Supp. 2d at 274-75 & n.3 (noting that a lack of personal involvement is grounds for dismissing a § 1983 claim on the merits and granting summary judgment in favor of defendants).  Here, based on the available, admissible evidence viewed in the light most favorable to Plaintiff, no reasonable jury could conclude that Farrelly was personally involved in Plaintiff's arrest.  *E.g.*, Farrelly Aff. 2.  The

affidavit of Farrelly, which is corroborated by information contained in the WPPD Tactical Operations Plan, Ex. I, establishes that Farrelly was assigned to the team responsible for perimeter security during the execution of the search warrant. *See* Farrelly Aff. 2; Ex. I, at 8. Because Farrelly was not personally involved in Plaintiff's arrest, he cannot be held personally liable under § 1983 for any alleged constitutional violation arising out of the arrest. Therefore, Defendant's motion for summary judgment on Plaintiff's false arrest claim is GRANTED.

### B. Plaintiff's Unlawful Strip Search Claim

Plaintiff has also claimed that his Fourth Amendment rights were violated when he was strip searched by Farrelly and another WPPD detective without probable cause. Am. Compl. 3; Sims Aff ¶ 3, Pl.'s 56.1 Stmt. ¶ 18. However, for reasons that are not clear to the Court, Defendant did not offer any arguments relating to Plaintiff's unlawful strip search claim in his motion papers, even though Plaintiff explicitly references the claim in his opposition papers.[10] Sims Aff. ¶ 3; Pl.'s 56.1 Stmt. ¶ 18. Defendant's failure to address Plaintiff's strip search claim is particularly incomprehensible in light of the undisputed evidence proffered by Defendant establishing that Farrelly *was* personally involved in the strip search of Plaintiff and the other seven detainees. *See* Farrelly Aff. 2; Ex. O. Notwithstanding Defendant's failure to address Plaintiff's claim that his Fourth Amendment rights were violated when he was subjected to an unreasonable strip search, the Court has considered the viability of Plaintiff's claim on the basis of the evidence in the record viewed in the light most favorable to Plaintiff.

---

[10] In a "reply affidavit" filed by Farrelly's attorney, defense counsel asserts that Farrelly "was ordered to do the search of the Plaintiff Pro Se herein as it was a narcotics raid and all persons therein were in fact searched and contraband had been found," [and] [t]his was all done pursuant to an Order of the Court of the City of White Plains . . ." Reply Aff. of Joseph A. Maria, Esq. 2, Doc. 90. This argument is improperly asserted in an affidavit of an attorney with no personal knowledge of the search at issue, and misrepresents the scope of the *search* warrant in the record, Ex. H, as well as the results of the strip searches that Farrelly conducted. *See* Ex. O.

### 1. Legal Standard

For more than twenty years, the Second Circuit has consistently and repeatedly held that a misdemeanor arrestee may not be strip searched in the absence of "an individualized 'reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.'" *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Weber v. Dell,* 804 F.2d 796, 802 (2d Cir. 1986)); *see also Kelsey v. Cnty. of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009) (reiterating the Circuit's "long-standing precedent covering strip searches for those arrested for misdemeanors" and collecting cases) (citations omitted); *N.G. v. Connecticut*, 382 F.3d 225, 232 (2d Cir. 2004) (noting that "all the circuits to have considered this issue have reached the same conclusion"). "To establish reasonable suspicion, officers must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." *Hartline*, 546 F.3d at 100 (quoting *Varone v. Bilottii*, 123 F.3d 75, 79 (2d Cir. 1997)). "The standard requires individualized suspicion, specifically directed to the person who is targeted for the strip search." *Id.*

The Second Circuit has held that an arrest for a misdemeanor drug offense, alone, is insufficient to satisfy the reasonable suspicion requirement. *Id.* at 101-02 (holding strip search of plaintiff arrested for misdemeanor marijuana possession to be a violation of the Fourth Amendment because the arresting officer had no reason to believe the plaintiff was illicitly concealing drugs on her person where, *inter alia*, he did not see the plaintiff "take any suspicious actions which might have suggested that she was hiding something as he approached her vehicle [prior to her arrest] . . . [he] did not notice anything about [her] physical appearance that suggested she was secreting drugs on her person, nor did he engage in a less invasive pat down

search that suggested the presence of contraband."); *see also, e.g.*, *Shain v. Ellison*, 273 F.3d 56, 66 (2d Cir. 2001) (holding that "it was clearly established in 1995 that persons charged with a misdemeanor and remanded to a local correctional facility [] have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons").

The same rule applies to felony narcotics arrestees. *See, e.g.*, *Sarnicola v. Cnty. of Westchester*, 229 F. Supp. 2d 259, 272, 274 (S.D.N.Y. 2002) (granting summary judgment in favor of plaintiff where officer "did not harbor any particular belief that [felony narcotics arrestee] was secreting drugs," and noting that "no court has ever held that being arrested for a narcotics-related crime automatically gives rise to reasonable suspicion that drugs are being carried in an arrestee's body cavities, so as to justify a strip search or visual body cavity inspection . . . ."); *see also Murcia v. Cnty. of Orange*, 226 F. Supp. 2d 489, 494 (S.D.N.Y. 2002) ("In the context of Fourth Amendment searches and seizures, the Supreme Court has stated that the distinction between felonies and misdemeanors 'is minor and often arbitrary,'" and "'the assumption that a "felon" is more dangerous than a misdemeanant [is] untenable.'" (quoting *Tennessee v. Garner*, 471 U.S. 1, 14 (1985))) (internal citations omitted).

   **2. Discussion**

The evidence in the record establishes that Plaintiff, along with the seven other arrestees, were all subjected to a strip search due generally "to the narcotics nature of the incident, the easy concealability [sic] of crack cocaine, and the criminal history of many of the subjects . . . ." Ex. O.  However, no particular acts are attributed to Plaintiff that would raise reasonable suspicion that he was concealing drugs, there was nothing about Plaintiff's appearance or demeanor that suggested that he was concealing drugs, it does not appear that Plaintiff had any opportunity to conceal drugs on his person after the WPPD arrived at the Residence, no narcotics were seized

from Plaintiff, Ex. L2, and the evidence in the record indicates that Plaintiff was strip searched *before* he was even questioned by any police officers at the police station. Sims Dep. 39:12-15, 61:25-62:19, 62:24-63:10, 65:7-68:5. Thus, the record before the Court fails to demonstrate the existence of individualized reasonable suspicion to believe that Plaintiff was secreting narcotics on his person. Accordingly, Defendant's motion for summary judgment is DENIED with respect to Plaintiff's claim that his Fourth Amendment rights were violated when he was subjected to an unreasonable strip search by Detective Farrelly and another WPPD officer on April 24, 2010.

### IV. Conclusion

For the reasons set forth above, Farrelly's Motion for Summary Judgment is GRANTED with respect to Plaintiff's false arrest claim and DENIED with respect to Plaintiff's unlawful strip search claim. The Clerk of the Court is respectfully directed to terminate the pending motion. Doc. 80.

The parties are instructed to file a joint pre-trial order in accordance with Rule 3(A) of my Individual Practices by **September 2, 2013**, and to appear for a final pre-trial conference on **September 9, 2013 at 10:30 am**, at which time the Court will set a trial date and a schedule for all pre-trial filings.

It is SO ORDERED.

Dated:   August 2, 2013
         New York, New York

Edgardo Ramos, U.S.D.J.